F I L E D
Clerk
District Court

AUG 09 2022

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MOHAMMAD ARMAN, ABUL KALAM AZAD, KOWSAR HALIM, AND HABIBUR RAHMAN, | Civil Case No.: 1:21-cv-00024 |
| Plaintiffs, | **MEMORANDUM DECISION GRANTING MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS** |
| vs. | |
| JN SAIPAN CNMI, LLC, BIG BOY MARINE SPORTS INC., MD. JASHIM UDDIN, and NASMUN NAHAR FATEMA, | |
| Defendants. | |

## I.   INTRODUCTION

Before the Court are Plaintiffs Mohammad Arman ("Arman"), Abul Kalam Azad ("Azad"), Kowsar Halim ("Halim"), and Habibur Rahman's ("Rahman") (collectively "Plaintiffs") motion for entry of default judgment against Defendants JN Saipan CNMI, LLC ("JN Saipan"), Md. Jashim Uddin ("Uddin"), and Nasmun Nanar Fatema ("Fatema") (collectively "Defendants"). Plaintiffs are four Bangladeshis whom were recruited by Defendants and/or their agents under false promises of employment and minimum wage, but after paying high recruitment fees, were instead given inconsistent work or work with no pay and crammed into poor living conditions.  Plaintiffs bring claims against Defendants and Big Boy Marine Sports Inc. ("Big Boy") under the Fair Labor Standards Act as well as state law claims. The Court dismissed Big Boy upon a motion to dismiss (ECF No. 20), but the three remaining Defendants failed to appear or file a responsive pleading such that the Court entered default against them on February 2, 2022 (ECF No. 18). Plaintiffs' motion for default judgment

was heard on June 16, 2022, during which time the Court GRANTED Plaintiffs' motion but for the lesser total amount of $182,722.35. The Court now issues this decision memorializing its reasoning.

## II.   BACKGROUND

### A.  Factual Background

The following facts are taken from the verified complaint. (Compl., ECF No. 6.) In 2015, Defendants JN Saipan CNMI, LLC, Big Boy Marine Sports Inc., Md. Jashim Uddin, and Nasmun Nanar Fatema and their associates recruited the four Plaintiffs—Mohammad Arman, Abul Kalam Azad, Kowsar Halim, and Habibur Rahman—in their home country of Bangladesh to live and work in the Commonwealth of the Northern Mariana Islands ("CNMI"). In recruiting Plaintiffs, Defendants promised that Plaintiffs would travel to the CNMI and be employed with Big Boy to clean vehicles and equipment. In exchange for their employment, Plaintiffs were promised the processing of their immigration paperwork and certain wages. "In or about November 2015, each Plaintiff signed an employment contract with Big Boy to clean vehicles and equipment in Saipan" at the minimum wage rate plus 1.5 times for overtime, and were "guaranteed not less than 40 hours of work per week, for a term of 12 months." (Compl. ¶¶ 15, ECF No. 6.) Big Boy, whom Uddin was a manager of at the time, was the company that petitioned for Plaintiffs. (*Id.* ¶¶ 13-14.) Plaintiffs' CW-1 visas were processed (*id.* ¶ 12), and in 2016, each of the Plaintiffs embarked on their journey from Bangladesh to the CNMI (*id.* ¶ 16).

Prior to their arrival, Defendants demanded steep recruitment fees from Plaintiffs and their families, ranging between $12,500 to $15,000. (*Id.* ¶ 11.) Defendants prevented Plaintiffs from revealing to anyone about these recruitment fees. For instance, upon their arrival in the CNMI and at

the Social Security Office, Defendant Uddin instructed Plaintiffs that "if asked about a recruitment fee, they should deny they paid and say that JN Saipan paid all the visa-processing and travel costs." (*Id*. ¶ 18.) In addition, if and when Defendant Uddin accompanied Plaintiffs to the local mosque, "he warned them not to mention to anyone that they had paid a recruitment fee." (*Id*. ¶ 21.) Defendants would continue to extort "additional fees from Plaintiffs to renew their CW-1 permits, but the permits were not renewed and, on information and belief, Uddin never petitioned USCIS to renew them." (*Id*. ¶ 25.)

With the exception of a brief stint by Halim, Plaintiffs never worked for Big Boy. (*Id*. ¶ 93.) In the weeks after their arrival, Defendant Uddin "only occasionally found work for Plaintiffs bush-cutting or house-cleaning." (*Id*. ¶ 23.) When Plaintiffs were given work, it was inconsistent and with little to no pay in return.

Arman worked at JN Saipan "as a security guard and briefly work[ed] construction at the Best Sunshine site" in or about April through June 2018. (*Id*. ¶ 39.) However, Defendant Uddin "only occasionally gave Arman money to cover Arman's rent and to buy food. Altogether from that period of work, Arman earned more than $12,000 in full-time and overtime wages that he was never paid." (*Id*.)

Azad worked "in different companies as a manpower worker" upon his arrival in the CNMI. (*Id*. ¶ 50.) Later, from late December 2017 through September 2018, he "worked full-time and overtime—extra hours during the workweek as well as weekends—for Uddin and JN Saipan and never received a paycheck from them." (*Id*. ¶ 52.) He is owed more than $30,000.00 in back wages. (*Id*. ¶ 53.)

Halim's "first job for Uddin was on a construction project. He worked 45 days straight, with no days off." (*Id*. ¶ 63.) "Later, Uddin gave Halim a job as a security guard for about 4 months. Halim worked 8 hours a day, 6 days a week, but Uddin did not pay him overtime wages." (*Id*. ¶ 66.) After that job ended, for a period of 5 months he was without work. (*Id*. ¶ 67.) He then worked from April 2017 through February 2019 as a security guard for JN Saipan but was not paid his wages and is owed close to $50,000.00 in back wages. (*Id*. ¶ 68.)

Finally, Rahman sometime in 2016 worked at a construction site for 45 days but otherwise only did the occasional house-cleaning and bush-cutting. "Uddin would sometime[s] give Rahman $20 or $30 to buy food but didn't give him a regular paycheck or have Rahman submit time sheets." (*Id*. ¶ 80.) Indeed, "[s]ince 2017, Plaintiffs have endured long periods where they were not taken to a job site, were given no work, and received no pay." (*Id*. ¶ 24.)

Throughout their residence in the CNMI, Plaintiffs lived in poor conditions. They were housed in small apartments with "not enough beds to go around." (*Id*. ¶ 20.) "Much of the time, the men were starving." (*Id*. ¶ 23.) And, Defendants Uddin and Fatema continuously threatened Plaintiffs should they report their circumstances to anyone. Uddin also "extorted additional fees from Plaintiffs to renew their CW-1 permits" throughout the years, but "never petitioned USCIS to renew them."  (*Id*. ¶ 25.)

"On January 21, 2021, Plaintiffs filed complaints against Uddin and JN Saipan with the CNMI Department of Labor. About two weeks later, Defendant Fatema visited Plaintiffs' homes in Bangladesh and made threats to have Plaintiffs thrown in jail in Saipan unless Plaintiffs dropped their cases." (*Id*. ¶¶ 26, 27.) When Halim complained to Uddin regarding his recruitment fee and promise of continuous employment, Defendant Uddin "told Halim his visa had already expired and threatened

4

that if Halim complained to authorities he would call Homeland Security and have Halim thrown in jail and deported." (*Id*. ¶ 67.)

**B. Procedural History**

On July 26, 2021, Plaintiffs filed *in forma pauperis* applications and a complaint against Defendants and Big Boy asserting four causes of action: (1) FLSA violation (against all), (2) breach of contract (against Big Boy only), (3) fraudulent misrepresentation (against all), and (4) unjust enrichment (against JN Saipan, Uddin, and Fatema only). (*See* IFP App., ECF Nos. 1-4; Compl., ECF No. 6.) Plaintiffs assert the Court's federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. 219 (penalties for FLSA violations), as well as supplemental jurisdiction under 28 U.S.C. § 1367(a) for the state law claims. (Compl. ¶ 1.) The Court screened Plaintiffs' complaint, found that Plaintiffs stated claims for FLSA violations as well as for the state law claims, and directed the U.S. Marshals to serve Defendants and Big Boy. (Screening Order, ECF No. 7.)

Big Boy then moved to dismiss the complaint. (Mot. to Dismiss, ECF No. 12; Mem. in Law, ECF No. 13), arguing that the FLSA claim against it should be dismissed given that it is barred by the statute of limitations, and that the state law claims (breach of contract and unjust enrichment) should be dismissed against it given the dismissal of the federal claim. The matter was heard, during which time Plaintiffs conceded to the dismissal of Big Boy, and the Court subsequently dismissed Big Boy. (ECF No. 20.)

As to Defendants JN Saipan, Uddin, and Fatema, those three Defendants did not file any answer or other responsive pleading. Plaintiffs moved for entry of default on January 31, 2022. (Mot. for Default, ECF No. 17.) The Clerk subsequently entered default against those three Defendants.

(Entry of Default, ECF No. 18.) With Big Boy dismissed, the remaining three claims against the defaulting Defendants are: FLSA violation (first cause of action), fraudulent misrepresentation (third), and unjust enrichment (fourth).

On March 2, 2022, Plaintiffs moved the Court for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), seeking a total amount of $184,495.35. (Mot. at 6, ECF No. 21.) In support of Plaintiffs' motion are affidavits provided from each Plaintiff (*see* Arman Decl., ECF No. 21-1; Azad Decl., ECF No. 21-3; Halim Decl., ECF No. 21-5; Rahman Decl., ECF No. 21-7), along with copies of their Department of Labor complaints that were dismissed for lack of jurisdiction (*see* Arman DOL Compl., ECF No. 21-2; Azad DOL Compl., ECF No. 21-4; Halim DOL Compl., ECF No. 21-6; Rahman DOL Compl., ECF No. 21-8.) The matter was heard on June 16, 2022 (Min., ECF No. 23), during which time the Court granted Plaintiffs' motion for default judgment, but for the slightly lesser total amount of $182,722.35.  The Court now issues its reasons as follows.

### III.   LEGAL STANDARD

Parties must apply to the court for default judgment when the claim is not for a sum certain. Fed. R. Civ. P. 55(b)(2). Courts have discretion whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In reviewing a claim for default judgment, all well-pleaded factual allegations in the complaint are taken as true. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). However, while detailed factual findings are not required by the moving party, legally insufficient claims or facts not within the pleadings are not established by default. *Trident Inv. Partners, Inc. v. Evans*, 2021 WL 75826, at *2 (D. Ariz. Jan. 8, 2021).

\

## IV.    DISCUSSION

### A. *Eitel* Factors

Under Federal Rules of Civil Procedure 55(b)(2), the Court has discretion to enter default judgment following an entry of default.  *Aldabe,* 616 F.2d at 1092. The Court must therefore determine whether the seven *Eitel* discretionary factors support an entry of default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citing 6 *Moore's Federal Practice* ¶ 55–05[2], at 55–24 to 55–26). Those factors are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel,* 782 F.2d at 1471–72. Here, Plaintiffs argue that the seven *Eitel* factors support entry of default judgment in their favor. (Mot. at 2-5.)

### 1.  Possible Prejudice

The first *Eitel* factor asks if Plaintiffs would suffer prejudice if default judgment is not entered. Courts have construed the failure to appear or participate as precluding recourse for recovery. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (holding that "[a]bsent an entry of default judgment, [plaintiff] will most likely be without recourse against [defendant], given [defendant's] unwillingness to cooperate and defend. Because [plaintiff] will suffer prejudice if he is without recourse against [defendant], this factor favors entry of a default judgment."); *Landstar Ranger, Inc. v. Parth Ent., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) ("Denying default judgment here would leave [plaintiff] without a proper remedy.").

Plaintiffs argue that Defendants' failure to participate in this action leaves Plaintiffs without a judicial avenue for relief, and thus the first factor weighs in favor of them. The Court agrees and finds that the first factor weighs in favor of Plaintiffs, because without moving towards a resolution, Plaintiffs will be unable to obtain relief or argue this case on the merits, particularly since the Defendants have refused to litigate.

2.  Merits and Sufficiency of Complaint

The two factors concerning the merits of Plaintiffs' claims and the sufficiency of their claims are perhaps the most important *Eitel* factors to establish. *See Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). The Court must ask: taken as true, do Plaintiffs' factual allegations in their complaint sufficiently show that the defaulting Defendants violated the FLSA and committed unjust enrichment and fraudulent misrepresentation?

As Plaintiffs note, the Court already determined through screening that Plaintiffs have pled sufficient factual contents showing their entitlement to relief. (*See* Mot. at 3; Screening Order, ECF No. 7.) Plaintiffs have also met their burden as to the merits of their claims through providing sworn affidavits from each Plaintiff illustrating that Defendants failed to compensate them for work they performed in violation of the FLSA and state law unjust enrichment, and that Defendants unjustly enrichment themselves by pocketing steep recruitment fees and renewal fees from Plaintiffs. The second and third *Eitel* factors therefore weigh in favor of entry of default judgment.

3.  Amount at Stake

The sum of money at stake must be balanced against the seriousness of the offense. *Const. Laborers Tr. Funds for S. Cal. Admin. Co. v. Anzalone Masonry Inc., et al.*, 316 F. Supp. 3d 1192,

1201 (C.D. Cal. 2018). "The amount at stake must not be disproportionate to the harm alleged." *Id*. If the sum of money requested is too large or unreasonable, default judgment is disfavored. *Id*. (citation omitted). Nevertheless, a "substantial sum" may be reasonable depending on the particular facts of the case. *Compare Eitel*, 782 F.2d at 1472 (approving denial of default judgment where plaintiff "was seeking almost $3 million in damages from [defendant] and because the parties disputed material facts in the pleadings"), *with United States v. Maxwell*, 2020 WL 2319978, at *2 (D. Ariz. May 11, 2020) (mitigating circumstances include the fact that the "substantial" sum at stake of approximately $500,000 was "amassed over the course of [a] decade" by individual who did not pay their tax obligation or remit payroll taxes for their businesses) *and Granite State Ins. Co. v. CME Pro. Serv. LLC*, 2019 WL 399923, at *3 (D. Ariz. Jan. 31, 2019) (determining amount at stake is substantial but weighing in favor of default judgment where "Defendant would be unjustly enriched absent payment").

The four Plaintiffs seek a total of $184,495.35 for unpaid wages, unpaid overtime, liquidated damages, as well as reimbursement for the recruitment fees and CW-1 renewal fees they paid Defendants. This amount is not unreasonable or disproportionate to the harm Plaintiffs suffered. Furthermore, because the Court is awarding liquidated damages, no prejudgment interest will be awarded. *See Caldman v. State of California*, 852 F. Supp. 898, 901 (E.D. Cal. 1994) (awarding prejudgment interest if liquidated damages are inappropriate).

4. <u>Material Dispute, Excusable Neglect, and Policy</u>

The failure of a defendant to appear, and consequently the subsequent entry of default, suggests there is no genuine issue of material fact. *See Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393

(C.D. Cal. 2005). The same is true for excusable neglect. *Laser Spine Inst., LLC v. Playa Advance Surgical Inst., LLC*, 2020 WL 5658711, at *4 (C.D. Cal. Sept. 23, 2020) ("There is no possibility of excusable neglect, as Defendants have openly flouted Court orders and refused to participate in this litigation . . . ."). However, the seventh factor generally weighs against default judgment, given that cases "should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Nevertheless, this preference is not dispositive as "the default mechanism is necessary to deal with wholly unresponsive parties who otherwise could cause the justice system to grind to a halt." *Evans*, 2021 WL 75826, at *3 (internal quotation marks and citation omitted). "Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." *Id*. (citation omitted). These factors are thus often easily addressed where defendants have failed to appear. *Id*. at *2.

Without any answer from Defendants, the Court cannot conceive of any material dispute or excusable neglect. While there is a "strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits," *Eitel*, 782 F.2d at 1472, there can be no decision on the merits where Defendants have failed to make an appearance. Thus, the remaining *Eitel* factors are met, and all seven *Eitel* factors weigh in favor of granting Plaintiffs' motion.

## B.  Proving Up Damages

A court may conduct a hearing to determine the amount of damages, establish the veracity of allegations, or investigate other matters. Fed. R. Civ. P. 55(b)(2)(B)-(D). Importantly, allegations regarding damages are not taken as true and must be independently proven. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1997).  Thus, "before the court can enter default judgment on a sum

uncertain, the plaintiff must *prove* its damages." *Rubicon Global Ventures, Inc. v. Chongqing Zongshen Group Import/Export Corp.*, 226 F. Supp. 3d 1141, 1148 (D. Or. 2016) (emphasis in original) (citation omitted). However, the plaintiff "need not submit voluminous evidence to support a claim for damages; a declaration or affidavit . . . that support[s] a damages award will suffice." *Barbee v. DNSPWR2 LLC*, 2020 WL 6585666, at *4 (D. Ariz. Nov. 10, 2020) (citing *Vogel*, 992 F. Supp. 2d at 1014). "[L]ess precise estimation[s] of damages" have been accepted "where a defendant frustrates the discovery of a precise amount by defaulting in the action." *Oakley, Inc. v. Moda Collection, LLC*, 2016 WL 7495837, at *1 (C.D. Cal. Sept. 28, 2016); *cf. Live Face on Web, LLC v. AZ Metroway, Inc.*, 2016 WL 4402796, at *6 (C.D. Cal. Aug. 15, 2016) (finding estimate of actual damages too speculative). Where a Plaintiff has "a valid methodology for making estimates, and so long as counsel explained the methodology in the motion for default judgment, an estimate might well be sufficient to convince the court to award damages." *Northwest Adm'rs, Inc. v. Uzunov Trucking, LLC*, 2010 WL 933873, at *2 (W.D. Wash. Mar. 11, 2010) (holding "nothing presumptively wrong" for estimated damages).

Here, Plaintiffs seek damages for their recruitment fees, CW-1 renewal fees, unpaid wages, and liquidated damages for their unpaid wages.

1. Recruitment Fees

Plaintiffs seek compensation for the recruitment fees they paid to Defendants. Defendants Uddin and Fatema, acting as agents of Defendant JN Saipan and with JN Saipan's knowledge, fraudulently induced Plaintiffs to come to Saipan and pay recruitment fees by promising them full-time work and immigration status. (Compl. ¶ 98.) These recruitment fees ranged from $12,500 to

$15,000. (*Id*. ¶ 11.)   According to the declarations and verified complaint, Arman's mother gave 1,000,000 taka in cash (approximately $12,500) to Uddin's mother to give to Uddin on April 10, 2016. (Arman Decl. at 2; Compl. ¶ 33.) Azad gave 200,000 taka to Firoz Alam on November 8, 2015; then deposited 550,000 taka to Fatema's bank account on May 5, 2016; deposited another 300,000 taka into the account on May 10, 2016; and finally paid the remaining 150,000 taka in cash, for a total of 1,200,000 taka (about $15,000). (Azad Decl. at 2; Compl. ¶ 43, 46, 47.) Halim's mother gave $12,500 cash to Uddin's mother to give to Fatema on April 10, 2016 (Halim Decl. at 2-3; Compl. ¶ 60), and Rahman's mother gave 1,000,000 taka in cash (approximately $12,500) to Uddin's mother to give to Uddin on April 10, 2016 (Rahman Decl. at 2; Compl. ¶ 75). Plaintiffs thus request $12,500 for recruitment fees for Arman, Halim, and Rahman each, and $15,000 for Azad from Defendants.

      Plaintiffs seek recovery for their recruitment fees pursuant to their fraudulent misrepresentation claim, or alternatively, under their unjust enrichment claim. (Compl. ¶¶ 98-102, 103-105.) However, because the statute of limitations for fraudulent misrepresentation in the CNMI is two years, the Court finds that Plaintiffs are barred from recovering their recruitment fees paid in 2015 and 2016 under fraudulent misrepresentation. *See United Micronesia Dev. Ass'n v. Wickline*, 2014 WL 12708980, at *3 (D. N. Mar. I. Oct. 7, 2014) ("The most recent case law shows that under CNMI law, the tort of fraud is, in fact, governed by § 2503(d)."); *see also* 7 CMC § 2503(d) (providing that actions for injury caused by the wrongful act of another must be commenced within two years after the cause of action accrues). Plaintiffs may instead recover their recruitment fees pursuant to their alternative unjust enrichment claim, which has a six-year statute of limitations period. *See Alvarez v. Seahorse Inc.*, 2017 WL 3973035, at *7 (D. N. Mar. I. Sept. 8, 2017) (finding that six-year statute of limitations period

applied to unjust enrichment claim); *see also* 7 CMC § 2505 ("All actions other than those covered in 7 CMC §§ 2502, 2503, and 2504 shall be commenced within six years after the cause of action accrues."). Furthermore, a party may recover for restitution under unjust enrichment. *See Syed v. Mobil Oil Mariana Islands, Inc.*, 2012 MP 20 ¶ 41 (N. Mar. I. 2012); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011) ("A person who is unjustly enriched at the expense of another is subject to liability in restitution."). Because Defendants Uddin and Fatema acted as agents of JN Saipan with its knowledge, the Court finds Defendant JN Saipan liable in restitution. *See* Restatement (Third) of Agency § 2.07 ("If a principal is unjustly enriched at the expense of another person by the action of an agent or a person who appears to be an agent, the principal is subject to a claim for restitution by that person."); 7 CMC § 3401 (noting that rules of the common law, including the Restatements, "shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary."). Plaintiffs are therefore entitled to the total requested amount of $52,500 as restitution from Defendant JN Saipan for the recruitment fees they paid.

### 2. CW-1 Fees

According to Plaintiffs, Uddin also extorted CW-1 renewal fees from Plaintiffs, and after Plaintiffs provided those renewal fees to Uddin, Plaintiffs never received proof of renewal or any other documentation. (Compl. ¶ 25.) Based on their declarations and verified complaint, Arman gave $500 to Uddin in 2017 to renew his CW-1. (Arman Decl. at 3; Compl. ¶ 25.) Azad was extorted in 2017 and 2018 of $500 each, or $1,000 total, for renewal fees. (Azad Decl. at 3; Compl. ¶ 51.) Halim gave Uddin a total of $3,000 for 2017, 2018, and 2019 renewal fees. (Halim Decl. at 5, Compl. ¶ 69.) Rahman

gave Uddin $1,000 in 2017 for renewal, but never received a receipt for it. (Rahman Decl. at 3, Compl. ¶ 81.) Plaintiffs thus seek as damages these renewal fees that they paid. For the same reasons discussed previously regarding unjust enrichment, Plaintiffs are entitled to a total of $5,500 as restitution. Because Plaintiffs do not allege that Defendant Uddin acted as an agent for any principal in collection of the renewal fees, Defendant Uddin is personally liable to Plaintiffs for the $5,500 in restitution.

### 3.   Unpaid Wages

Pursuant to the FLSA, employers may be liable to an employee for unpaid minimum wages and unpaid overtime. *See* 29 U.S.C. §§ 206 (minimum wage), 207 (overtime), 216(b) (penalties). First, the FLSA guarantees only minimum wage payments for regular hours worked—no more, no less. Thus, Plaintiffs may be entitled to unpaid minimum wages at a rate of $6.55 starting September 30, 2016; $7.05 starting September 30, 2017; and $7.25 per hour for regular hours worked starting September 30, 2018. *See* Fair Minimum Wage At of 2007, Pub. L. No. 110-28, § 8103, 121 Stat. 112, 188-189 (2007). Second, the FLSA also mandates overtime compensation by multiplying the employee's overtime hours by one and one-half times the regular rate of pay. *Id*. § 207(a)(1) (requiring employees working over 40 hours in a single work week to be paid "at a rate not less than one and one-half times the *regular rate* at which he is employed." (emphasis added)). The "regular rate," is distinct from the minimum wage and is defined as including "*all* remuneration for employment" paid to the employee. *Id*. § 207(e) (emphasis added) (listing exhaustive list of exclusions such as gifts and vacation pay). Thus, overtime is the contractual rate of pay to which the employer and employee agreed.

Plaintiffs request a total of $92,676.35 in unpaid wages owed under their FLSA claim, or

alternatively, under their unjust enrichment claim. (*See* Mot. at 5-6; Compl. ¶¶ 83-90, 103-105.) Arman seeks unpaid wages for work he performed as a security guard from March 23, 2017 to March 31, 2018 for JN Saipan and then at the Best Sunshine construction site from May 28, 2018 to June 28, 2018 that he was not compensated for. (*See* Arman Decl. at 3; Arman DOL Compl.; Compl. ¶ 39), minus $1,000 for rent and food that Uddin provided. His request seeks compensation for 988 regular hours worked and 612 overtime hours worked.[1] (*See* Arman DOL Compl.; Compl. ¶ 52.) Azad seeks unpaid wages for 9 months he worked as a security guard for JN Saipan from December 28, 2017 to September 30, 2018 – totaling about 1,491 regular hours and 1,860 overtime hours worked. (*See* Azad Decl. at 4; Azad DOL Compl.) Halim worked for JN Saipan for about 2 years from April 1, 2017[2] to February 28, 2019 without any pay, except for food and rent provided for in an amount around $2,000. (*See* Halim Decl. at 5; Compl. ¶ 68.) His regular hours total 2,400 hours and overtime of 3,048 hours. (*See* Halim DOL Compl.) Rahman, unlike the other plaintiffs, was not put to work as a security guard for JN Saipan. Rather, Defendant Uddin gave him work cleaning a local house and bush cutting; Rahman thus seeks fees for 126 regular hours he worked unpaid from May 29, 2018 to October 15, 2018. (*See* Rahman Decl. at 3; Rahman DOL Compl.; Compl. ¶ 80.)

Having reviewed Plaintiffs' submissions, the Court finds that Plaintiffs may only recover a portion of their unpaid wages under their FLSA claim in light of the statute of limitations period. Because Plaintiffs' complaint was filed on July 26, 2021, and Plaintiffs allege a willful violation under

---

[1] Although Arman's declaration originally requested unpaid wages for 996 regular hours worked and 604 overtime hours worked (see Arman DOL Compl.), corrections were made during the motion hearing regarding the proper number of regular and overtime hours for the period from May 28, 2018 to June 1, 2018.

[2] However, Halim only seeks damages for unpaid wages starting December 1, 2017.

the FLSA (Compl. ¶ 89), the three-year statute of limitations for willful violation applies. *See* 29 U.S.C. § 255(a). In other words, the cut-off accrual date is July 27, 2018. However, as Plaintiffs note, an FLSA action accrues "the day the employee's paycheck is normally issued, but isn't." *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993). Because Plaintiffs do not have an established pay period, the Court takes judicial notice of the general pay period within the CNMI, which is biweekly and on the Friday one week after a pay period ends. *See* Fed. R. Evid. 201(b) (providing that a Court may take judicial notice of a fact "not subject to reasonable dispute" because it is generally known within the court's jurisdiction or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Since July 27, 2018 falls on a Friday when checks are generally given in the CNMI the week after a two-week work period, Plaintiffs[3] may recover unpaid wages for work performed starting Monday, July 9, 2018 under the FLSA.

Plaintiffs additionally seek recovery for unpaid wages for periods that fall outside the FLSA's statute of limitations period. The Court nevertheless finds that Plaintiffs may recover these portions of their unpaid wages as restitution pursuant to their unjust enrichment claim, which has a six-year statute of limitations period in the CNMI. *See Alvarez*, 2017 WL 3973035, at *7 (noting a six-year statute of limitation period for an unjust enrichment claim); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011) ("A person who is unjustly enriched at the expense of another is subject to liability in restitution."). Plaintiffs seek unpaid wages for their unjust enrichment claim using the

---

[3] Only three of the Plaintiffs (Azad, Halim, and Rahman) have unpaid wages for periods that fall within the FLSA statute of limitations period. All of Arman's unpaid wages period fall outside the FLSA period.

FLSA's methodology. The issue for the Court to resolve then is whether the FLSA measurement is a reasonable measurement to determine the amounts owed to Plaintiffs pursuant to unjust enrichment.

CNMI law "directs CNMI courts to the Restatements for guidance" on restitution and unjust enrichment. *Boeing Co. v. Leo A. Daly Co.*, 2014 WL 12694132, at *3 n. 3 (D. N. Mar. I. Sept. 22, 2014). Under the Restatement (Third) of Restitution and Unjust Enrichment § 49(3):

> Enrichment from the receipt of nonreturnable benefits may be measured by
> (a) the value of the benefit in advancing the purposes of the defendant,
> (b) the cost to the claimant of conferring the benefit,
> (c) the market value of the benefit, or
> (d) a price the defendant has expressed a willingness to pay, if the defendant's assent may be treated as valid on the question of price.

Furthermore, under the Restatement (Third) of Restitution and Unjust Enrichment § 52(2), "[a] defendant who is responsible for enrichment . . . may be subject to a greater liability in restitution than an innocent recipient of the same benefits, in order that the defendant rather than the claimant bear the costs of the transaction." Given that the benefit conferred here involves labor rendered, it is difficult to measure the true value of the benefit of labor rendered to Defendants or the actual costs to Plaintiffs for rendering their services. Nonetheless, the Court finds that utilizing the FLSA's federal minimum wage rates for regular hours and the FLSA's overtime rates based on one and one-half times the regular rate of pay is a reasonable methodology for determining the market value of Plaintiffs' works and services provided for the benefit of Defendants.

Applying the FLSA methodology to Plaintiffs' unpaid wages calculations, the Court finds it necessary to make the following changes to Plaintiffs' proposed amounts. First, Plaintiff Arman's request for unpaid regular wages starting May 28, 2018 seeks unpaid wages at a rate of $8.00 per hour;

however, because the Court can only award the federal minimum wage rate—no more, no less—the Court will only apply the $7.05 federal minimum wage rate for the pay periods from May 28, 2018 to June 1, 2018 and June 14, 2018 to June 28, 2018. Second, Plaintiff Rahman similarly requests a regular rate of $8 per hour for his unpaid wages. However, for the same reasons discussed, the Court will only award the applicable federal minimum wage rate. Third, Plaintiffs apply overtime rates of $9.82 (based on $6.55 federal minimum wage rate), $10.50 (based on $7.05 federal minimum wage rate), and $10.87 (based on $7.25 federal minimum wage rate), when proper calculations based on one and one-half times the regular rate of pay entitle them to overtime rates of $9.83, $10.58, and $10.88, respectively. The Court will therefore adjust the overtime rates to reflect these slightly higher rates that Plaintiffs are entitled to by law. Fourth, Plaintiff Azad claims that Uddin gave him rent and food in the amount total of about $1,300 (Azad Decl. at 5), and Plaintiff Halim also claims that Uddin gave him rent and food in the total approximate amount of $2,000 (Halim Decl. at 5), but both individuals did not deduct those amounts from their request for unpaid wages. (Halim Decl. at 5.) Because Plaintiffs' damages are limited to the benefits conferred, the Court will deduct those amounts from Plaintiffs' requests.

The Court therefore awards Plaintiff Arman $12,154.70 in unpaid wages against Defendant JN Saipan, Plaintiff Azad $29,181.05 in unpaid wages against Defendant JN Saipan, Plaintiff Halim $47,616.20 in unpaid wages against Defendant JN Saipan, and Plaintiff Rahman $897.90 in unpaid wages against Defendant Uddin, as further detailed in the charts below.

\\

\

**Mohammed Arman**

| Pay Period Begin Date | Pay Period End Date | Hours Worked | Requested Rate | Entitled Rate | Overtime Hours Worked | Requested OT Rate | Entitled OT Rate | Unpaid Total Requested | Unpaid Total Entitled | Liquidated Requested | Liquidated Entitled |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/23/17 | 3/31/17 | 64 | $ 6.55 | $ 6.55 | 0 | $ 0 | $ 0 | $ 419.20 | $ 419.20 | $ 0 | $ 0 |
| 4/1/17 | 4/29/17 | 160 | $ 6.55 | $ 6.55 | 72 | $ 9.82 | $ 9.83 | $ 1,755.04 | $ 1,755.40 | $ 0 | $ 0 |
| 5/1/17 | 5/28/17 | 160 | $ 6.55 | $ 6.55 | 64 | $ 9.82 | $ 9.83 | $ 1,676.48 | $ 1,676.80 | $ 0 | $ 0 |
| 12/29/17 | 12/31/17 | 36 | $ 7.05 | $ 7.05 | 0 | $ 0 | $ 0 | $ 253.80 | $ 253.80 | $ 0 | $ 0 |
| 1/1/18 | 1/31/18 | 160 | $ 7.05 | $ 7.05 | 200 | $ 10.50 | $ 10.58 | $ 3,228.00 | $ 3,243.00 | $ 0 | $ 0 |
| 2/1/18 | 2/28/18 | 160 | $ 7.05 | $ 7.05 | 176 | $ 10.50 | $ 10.58 | $ 2,976.00 | $ 2,989.20 | $ 0 | $ 0 |
| 3/1/18 | 3/29/18 | 160 | $ 7.05 | $ 7.05 | 92 | $ 10.50 | $ 10.58 | $ 2,094.00 | $ 2,100.90 | $ 0 | $ 0 |
| 5/28/18 | 6/1/18 | 40 | $ 8.00 | $ 7.05 | 8 | $ 0 | $ 12.00 | $ 320.00 | $ 378.00 | $ 0 | $ 0 |
| 6/14/18 | 6/28/18 | 48 | $ 8.00 | $ 7.05 | 0 | $ 0 | $ 12.00 | $ 384.00 | $ 338.40 | $ 0 | $ 0 |
| Food/Rent deduction | | | | | | | | $ (1,000.00) | $ (1,000.00) | | |
| **Total** | | **988** | | | **612** | | | **$ 12,106.52** | **$ 12,154.70** | **$ 0** | **$ 0** |

**Abul Azad**

| Pay Period Begin Date | Pay Period End Date | Hours Worked | Requested Rate | Entitled Rate | Overtime Hours Worked | Requested OT Rate | Entitled OT Rate | Unpaid Total Requested | Unpaid Total Entitled | Liquidated Requested | Liquidated Entitled |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/28/17 | 12/31/17 | 51 | $ 7.05 | $ 7.05 | 0 | $ 0 | $ 0 | $ 359.55 | $ 359.55 | $ 0 | $ 0 |
| 1/1/18 | 1/31/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 0 | $ 0 |
| 2/1/18 | 2/28/18 | 160 | $ 7.05 | $ 7.05 | 176 | $ 10.50 | $ 10.58 | $ 2,976.00 | $ 2,989.20 | $ 0 | $ 0 |
| 3/1/18 | 3/31/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 0 | $ 0 |
| 4/1/18 | 4/30/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 0 | $ 0 |
| 5/1/18 | 5/31/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 0 | $ 0 |
| 6/1/18 | 6/30/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 0 | $ 0 |
| 7/1/18 | 7/31/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 2,236.00 | $ 2,246.60 |
| 8/1/18 | 8/31/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 3,354.00 | $ 3,369.90 |
| 9/1/18 | 9/30/18 | 160 | $ 7.05 | $ 7.05 | 200 | $ 10.50 | $ 10.58 | $ 3,228.00 | $ 3,243.00 | $ 3,228.00 | $ 3,243.00 |
| Food/Rent deduction | | | | | | | | $ 0 | $ (1,000.00) | | |
| **Total** | | **1491** | | | **1860** | | | **$ 30,041.55** | **$ 29,181.05** | **$ 8,818.00** | **$ 8,859.50** |

*\* Note: portions highlighted in gray denote pay periods that fall within the FLSA statute of limitations period.*

**Kowsar Halim**

| Pay Period Begin Date | Pay Period End Date | Hours Worked | Requested Rate | Entitled Rate | Overtime Hours Worked | Requested OT Rate | Entitled OT Rate | Unpaid Total Requested | Unpaid Total Entitled | Liquidated Requested | Liquidated Entitled |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/1/17 | 12/31/17 | 160 | $ 7.05 | $ 7.05 | 200 | $ 10.50 | $ 10.58 | $ 3,228.00 | $ 3,243.00 | $ 0 | $ 0 |
| 1/1/18 | 1/31/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 0 | $ 0 |
| 2/1/18 | 2/28/18 | 160 | $ 7.05 | $ 7.05 | 176 | $ 10.50 | $ 10.58 | $ 2,976.00 | $ 2,989.20 | $ 0 | $ 0 |
| 3/1/18 | 3/31/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 0 | $ 0 |
| 4/1/18 | 4/30/18 | 160 | $ 7.05 | $ 7.05 | 200 | $ 10.50 | $ 10.58 | $ 3,228.00 | $ 3,243.00 | $ 0 | $ 0 |
| 5/1/18 | 5/31/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 0 | $ 0 |
| 6/1/19 | 6/30/19 | 160 | $ 7.05 | $ 7.05 | 200 | $ 10.50 | $ 10.58 | $ 3,228.00 | $ 3,243.00 | $ 0 | $ 0 |
| 7/1/18 | 7/31/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 2,236.00 | $ 2,246.60 |
| 8/1/18 | 8/31/18 | 160 | $ 7.05 | $ 7.05 | 212 | $ 10.50 | $ 10.58 | $ 3,354.00 | $ 3,369.90 | $ 3,354.00 | $ 3,369.90 |
| 9/1/18 | 9/30/18 | 160 | $ 7.05 | $ 7.05 | 200 | $ 10.50 | $ 10.58 | $ 3,228.00 | $ 3,243.00 | $ 3,228.00 | $ 3,243.00 |
| 10/1/18 | 10/31/18 | 160 | $ 7.25 | $ 7.25 | 212 | $ 10.87 | $ 10.88 | $ 3,464.44 | $ 3,465.50 | $ 3,464.44 | $ 3,465.50 |
| 11/1/18 | 11/30/18 | 160 | $ 7.25 | $ 7.25 | 200 | $ 10.87 | $ 10.88 | $ 3,334.00 | $ 3,335.00 | $ 3,334.00 | $ 3,335.00 |
| 12/1/18 | 12/31/18 | 160 | $ 7.25 | $ 7.25 | 212 | $ 10.87 | $ 10.88 | $ 3,464.44 | $ 3,465.50 | $ 3,464.44 | $ 3,465.50 |
| 1/1/19 | 1/31/19 | 160 | $ 7.25 | $ 7.25 | 212 | $ 10.87 | $ 10.88 | $ 3,464.44 | $ 3,465.50 | $ 3,464.44 | $ 3,465.50 |
| 2/1/19 | 2/28/19 | 160 | $ 7.25 | $ 7.25 | 176 | $ 10.87 | $ 10.88 | $ 3,073.12 | $ 3,074.00 | $ 3,073.12 | $ 3,074.00 |
| Food/Rent deduction | | | | | | | | $ 0 | $ (2,000.00) | | |
| **Total** | | **2400** | | | **3048** | | | **$ 49,458.44** | **$ 47,616.20** | **$ 25,618.44** | **$ 25,665.00** |

**Habibur Rahman**

| Pay Period Begin Date | Pay Period End Date | Hours Worked | Requested Rate | Entitled Rate | Overtime Hours Worked | Requested OT Rate | Entitled OT Rate | Unpaid Total Requested | Unpaid Total Entitled | Liquidated Requested | Liquidated Entitled |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/29/18 | 5/31/18 | 30 | $ 8.00 | $ 7.05 | 0 | $ 0 | $ 0 | $ 240.00 | $ 211.50 | $ 0 | $ 0 |
| 6/1/18 | 6/18/18 | 48 | $ 8.00 | $ 7.05 | 0 | $ 0 | $ 0 | $ 384.00 | $ 338.40 | $ 0 | $ 0 |
| 10/1/18 | 10/15/18 | 48 | $ 8.00 | $ 7.25 | 0 | $ 0 | $ 0 | $ 384.00 | $ 348.00 | $ 384.00 | $ 348.00 |
| **Total** | | **126** | | | **0** | | | **$ 1,008.00** | **$ 897.90** | **$ 384.00** | **$ 348.00** |

4.  <u>Liquidated Damages</u>

The FLSA plainly allows for liquidated damages in an amount equal to unpaid minimum wage

and overtime wages. 29 U.S.C. § 216(b). However, "[t]he Portal-to-Portal Act, 29 U.S.C. § 260, made

doubling discretionary rather than mandatory, by permitting a court to withhold liquidated damages in an action to recover unpaid minimum wages 'if the employer shows . . . that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA].'" *Caldman*, 852 F. Supp. at 901. The Ninth Circuit additionally holds that because the FLSA requires wages be timely paid, "wages become 'unpaid' . . . when they are not paid at the time work has been done"—both for minimum wage hours and overtime hours. *Biggs*, 1 F.3d at 1540.

Because Defendants failed to respond or otherwise appear, they have not demonstrated any good faith basis for their failure to timely pay Plaintiffs. Accordingly, the Court finds liquidated damages appropriate for portions of Plaintiffs' wages covered under the FLSA. Plaintiffs request a total of $33,819 in liquidated damages. (Mot. at 5-6.) To obtain this figure, Plaintiffs applied an amount equal to unpaid wages recoverable under the FLSA only, and apportioned amounts for their estimated pay periods that fall both inside and outside the FLSA statute of limitations period. For example, for both Azad and Halim, Plaintiffs deducted one-thirds from their calculations for the period from July 1, 2018 to July 30, 2018. (*See* Mot. at 5, n. 6, 7.) The Court finds this adjustment reasonable. However, given that the Court adjusted Plaintiffs' calculations for unpaid wages, it follows that Plaintiffs' liquidated damages must likewise be adjusted. Having reviewed Plaintiffs' submissions, the Court awards Azad $8,859.50, Halim $25,665, and Rahman $348 in liquidated damages, as further detailed in the tables above, for a total of $34,872.50.

\\

\

5. <u>Summary</u>

In sum, Plaintiffs seek the following amount:

**Plaintiffs' Requested Amount**

| | Recruitment Fee | CW-1 fees | Unpaid Wages | FLSA Liquidated Damages | Total |
|---|---|---|---|---|---|
| Mohammad Arman | $12,500.00 | $500.00 | $12,169.80 | $0 | $25,169.80 |
| Abul Kalam Azad | $15,000.00 | $1,000.00 | $30,041.55 | $8,818.00 | $54,859.55 |
| Kowsar Halim | $12,500.00 | $3,000.00 | $49,457.00 | $24,617.00 | $89,574.00 |
| Habibur Rahman | $12,500.00 | $1,000.00 | $1,008.00 | $384.00 | $14,892.00 |
| **Total** | **$52,500.00** | **$5,500.00** | **$92,676.35** | **$33,819.00** | **$184,495.35** |

However, for the reasons set forth above, the Court will award Plaintiffs as follows:

**Default Judgment Award**

| | Recruitment Fee | CW-1 fees | Unpaid Wages | FLSA Liquidated Damages | Total |
|---|---|---|---|---|---|
| Mohammad Arman | $12,500.00 | $500.00* | $12,154.70 | $        - | $25,154.70 |
| Abul Kalam Azad | $15,000.00 | $1,000.00* | $29,181.05 | $8,859.50 | $54,040.55 |
| Kowsar Halim | $12,500.00 | $3,000.00* | $47,616.20 | $25,665.00 | $88,781.20 |
| Habibur Rahman | $12,500.00 | $1,000.00* | $897.90* | $348.00* | $14,745.90 |
| **Total** | **$52,500.00** | **$5,500.00** | **$89,849.85** | **$34,872.50** | **$182,722.35** |

*\* Portions Defendant Uddin is personally and solely liable for.*

Defendant Uddin is liable to Plaintiffs in the total amount of $6,745.90, and Defendant JN Saipan is

liable for the remaining $175,976.45, for the total amount of $182,722.35.

**C. Alter Ego Theory of Liability**

Plaintiffs separately assert an alter ego theory of liability, alleging that Defendant JN Saipan

CNMI, LLC is the alter ego of Defendants Uddin and Fatema (Compl. ¶¶ 106-107.) "Under Federal

Rule of Civil Procedure 69, district courts enforce money judgments in accordance with the procedures

of the states where they are located." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir.

2017) (citing Fed. R. Civ. P. 69(a)(1)). "In the CNMI, 'when the shareholders treat the corporation not

as a 'separate entity' but rather as an instrument to conduct their own personal business, the court may 'pierce the corporate veil' for purposes of liability.'" *Saipan Air, Inc. v. Stukes*, 2014 WL 6978488, at *15 (D. N. Mar. I. Dec. 8, 2014) (quoting *Dela Cruz v. Hotel Nikko Saipan, Inc.*, 1997 MP 16 ¶ 17 (N. Mar. I. 1997)). "To pierce the corporate veil, a court must determine (1) 'whether the interests of the dominant stockholders are so intertwined with those of the corporation that separate entities no longer exist,' and (2) 'whether injustice or fraud would result if the fiction of separate entities was upheld.'" *Id.* (quoting *United Enterprises, Inc. v. King*, 4 N.M.I. 304, 307 (N. Mar. I. 1995). As to the former, "[a] host of factors must be examined, including but not limited to undercapitalization, failure to observe corporate formalities, siphoning of corporate funds by dominant shareholders, and the extent of the individual's control over the entity." *Id.*

Plaintiffs allege that per the 2017 Annual LLC Report, the most recent annual report for JN Saipan filed at the CNMI Department of Commerce, the members of JN Saipan CNMI, LLC are Defendant Uddin (President/Secretary), Defendant Fatema (Vice President), and Fahim Shahria Uddin[4] (Treasurer). (Compl. ¶¶ 5, 108.) Defendants Uddin and Fatema own 90 percent of the shares of JN Saipan and use the limited liability company to conduct their own personal business. (*Id.* ¶ 107.) Furthermore, Plaintiffs note that when they worked for JN Saipan and were actually paid, they did not receive paychecks drawn from a JN Saipan bank account but were paid in cash by Uddin. (*Id.* ¶ 109.) In light of these facts, the Court finds that JN Saipan is the alter ego of Defendants Uddin and Fatema,

---

[4] Fahim is Defendants Uddin and Fatema's son. (Compl. ¶ 7.)

23

and that injustice would result if the Court were to treat the entity separate from the individuals. Accordingly, the Court also imposes personal liability against Defendants Uddin and Fatema for the $175,976.45 amount owed by JN Saipan.

## V.    CONCLUSION

For the reasons set forth above, the Clerk shall enter default judgment:

1) against Defendant Md. Jashim Uddin and in favor of Plaintiffs in the amount of $6,745.90, plus attorneys' fees and costs[5], plus post-judgment interest at the applicable federal rate; and

2) against Defendants JN Saipan CNMI, LLC, Md. Jashim Uddin, and Nasmun Nahar Fatema, jointly and severally, and in favor of Plaintiffs, in the amount of $175,976.45, plus attorneys' fees and costs, plus post-judgment interest at the applicable federal rate.

IT IS SO ORDERED this 9th day of August, 2022.

RAMONA V. MANGLONA
Chief Judge

---

[5] The FLSA provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).